UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KRISTINA V.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

1:25-CV-00197 CDH

## INTRODUCTION

Plaintiff Kristina V. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 10; Dkt. 11; Dkt. 12). For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## BACKGROUND

On March 7, 2022, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning August 1, 2020. (Dkt. 5 at 15, 96, 115).[1] Her applications

[1] In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

were initially denied on September 9, 2022, and upon reconsideration on April 6, 2023. (*Id.* at 15, 161-78, 183-90). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id.* at 191-92), which was held on February 22, 2024 (*id.* at 50-95).

On June 26, 2024, the ALJ issued an unfavorable decision. (*Id.* at 12-40). Plaintiff sought review from the Appeals Council, which denied her request on January 28, 2025. (*Id.* at 6-11). This action followed.

## LEGAL STANDARD

### I. Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of

Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* §§ 404.1509, 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id.* §§ 404.1520(e), 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1545, 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II. <u>Review by the Court</u>

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for disability benefits. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (quotation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I. The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2024. (Dkt. 5 at 18).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since August 1, 2020, the alleged onset date. (*Id.*). The ALJ found at step two that Plaintiff had the severe impairments of: "chronic obstructive pulmonary disease ('COPD'); history of hemorrhagic stroke in July 2020; migraine headaches; and posterior glottic stenosis and tracheotomy dependence." (*Id.*). The ALJ also concluded that Plaintiff had the following non-severe impairments: generalized anxiety disorder, major depressive disorder, cannabis use disorder, cocaine use disorder (in

remission), obesity, gastroesophageal reflux disease, hypertension, hyponatremia, stress incontinence, and history of deep vein thrombosis. (*Id*. at 18-19).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id*. at 22). At step three, the ALJ specifically discussed the criteria of Listings 3.02 and 11.04. (*Id*. at 22-23).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the additional limitations that Plaintiff:

> is limited to frequent use of ramps and stairs; frequent kneeling; occasional stooping, crouching, and crawling; occasional use of ladders, ropes, and scaffolds; and no loud noise exposure. She should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.

(*Id*. at 23). The ALJ then proceeded to step four and found that Plaintiff was able to perform her past relevant work as a data entry clerk and an office helper as generally performed in the national economy. (*Id*. at 32).

Alternatively, the ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id*. at 32-33). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from August 1, 2020, through the date of the ALJ's decision. (*Id*. at 33-34).

## II. The Commissioner's Final Determination is Supported by Substantial Evidence and Does Not Contain a Reversible Legal Error

Plaintiff argues that remand of this matter is necessary because: (1) the ALJ "failed to properly evaluate Plaintiff's mental health impairments at step two and within the RFC"; and (2) the ALJ improperly rejected certain portions of the opinion of consultative examiner Dr. Hongbiao Liu. (Dkt. 10-1 at 1, 13-19). The Court is unpersuaded by these arguments, for the reasons set forth below.

### A. Evaluation of Mental Health Impairments

The step two severity determination "is intended to increase the efficiency and reliability of the disability evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled." *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 295 (W.D.N.Y. 2016) (alterations and quotation omitted). As noted above, a severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F.Supp.3d 253, 265 (N.D.N.Y. 2012). While only "*de minimis* claims" should be screened out at step two, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe," *Taylor,* 32 F. Supp. 3d at 265 (quotations omitted). An impairment is non-severe "if the medical evidence establishes only a

slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Howard*, 203 F. Supp. 3d at 296.

When evaluating the severity of mental impairments, an ALJ must apply a "special technique" set forth in the Commissioner's regulations. 20 C.F.R. § 404.1520a(a). "The criteria for this evaluation—usually referred to as the 'paragraph A' and 'paragraph B' criteria—are provided in section 12.00 of the Listings." *Kathryn A. v. Commr of Soc. Sec.*, No. 3:22-CV-1392 (SDV), 2023 WL 8596012, at *7 (D. Conn. Dec. 12, 2023). The ALJ first "evaluates whether the claimant has a medically determinable mental impairment using the paragraph A criteria." *Id*. If the claimant has such a mental impairment, "the ALJ assesses the claimant's degree of functional limitation in the 'four broad functional areas' described in paragraph B: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself." *Id*. With respect to each of these areas, the ALJ then "must rate the degree of limitation in each functional area on a five-point scale: None, mild, moderate, marked, and extreme." *Id*. If there is a rating of "none" or "mild" in each of the functional areas, the mental impairment(s) will generally be found to be non-severe. *Id*.

The ALJ applied the special technique in assessing Plaintiff's mental impairments in this case. The ALJ first concluded that Plaintiff had the medically determinable mental impairments of generalized anxiety disorder, major depressive disorder, cannabis use disorder, and cocaine use disorder (in remission). (Dkt. 5 at 19). The ALJ then applied the paragraph B criteria and concluded that Plaintiff had

no limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing oneself. (*Id*. at 19-20). The ALJ determined that Plaintiff's medically determinable mental impairments were non-severe, because "considered singly and in combination," they did "not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities[.]" (*Id.* at 19).

Plaintiff argues that the ALJ's step two analysis was unsupported by substantial evidence, because the ALJ improperly rejected the opinion of treating nurse practitioner ("N.P.") Angela J. Roche. (Dkt. 10-1 at 14). N.P. Roche opined on February 22, 2024, that Plaintiff was:

> precluded from performance for less than 10% of an 8-hour workday from maintaining regular attendance and being punctual within customary, usually strict tolerance and is precluded from performance for more than 20% of an 8-hour workday in understanding, remembering, and carrying out very short and simple, as well as detailed instructions, sustaining an ordinary routine without special supervision, and traveling to unfamiliar places or using public transportation, would be off-task more than 30% of an 8-hour workday, 5 days per week, and would be absent more than four days per month due to her impairments or treatment.

(Dkt. 5 at 21; *see* Dkt. 6 at 440-46). The ALJ found this opinion not persuasive. (Dkt. 5 at 21).

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions

and all of the prior administrative medical findings in your case record.”). The Commissioner’s regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, “[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be”; (2) consistency, meaning that, “[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be”; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist “may be more persuasive about medical issues related to his or her area of specialty” than the opinion of a non-specialist; and (5) “other factors that tend to support or contradict a medical opinion,” which includes but is not limited to “evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program’s policies and evidentiary requirements.” 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors and must be discussed in the ALJ’s decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

Here, the ALJ complied with the regulations in assessing N.P. Roche’s opinion. As to supportability, the ALJ explained that while N.P. Roche’s treatment records

noted that Plaintiff had memory problems and difficulty doing certain tasks, those notations "appear[ed] to be overly reliant on [Plaintiff's] subjective, unsupported complaints." (Dkt. 5 at 21). As to consistency, the ALJ explained that N.P. Roche's opinion was inconsistent with "mental status examinations showing [Plaintiff] was alert, fully oriented, cooperative, attentive, and denied hallucinations or suicidal or homicidal ideation" and with a neurologist's assessment showing that Plaintiff's "immediate recall and recent and remote memory were intact." (*Id.*).

Plaintiff is correct that an ALJ may not discount a medical opinion solely because it is based, in part, on a claimant's subjective complaints. (*See* Dkt. 10-1 at 15); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (explaining that physician appropriately relied on both the claimant's subjective complaints as well as "numerous physical examinations and diagnostic procedures" in forming his opinions, because "a patient's report of complaints, or history, is an essential diagnostic tool" (alteration and quotation omitted)). However, "while a claimant's subjective complaints may be considered as part of valid psychological testing and diagnosis, those complaints do not transform into objective medical evidence simply because they are recited by a medical provider." *Michelle D. v. Comm'r of Soc. Sec.*, No. 22-CV-6538-FPG, 2024 WL 108685, at *3 (W.D.N.Y. Jan. 10, 2024); *see also Stacie L.S. v. Comm'r of Soc. Sec.*, No. 5:24-CV-01042 (AMN/ML), 2025 WL 2933283, at *10 n.4 (N.D.N.Y. Sept. 2, 2025) ("Rejection of a mental health opinion that is based solely on subjective complaints may be appropriate under certain circumstances."), *adopted*, 2025 WL 2751148 (N.D.N.Y. Sept. 29, 2025). Where the claimant's subjective complaints are unsupported by the objective medical evidence, an ALJ may

appropriately discount a medical opinion based thereon. *See Gates v. Astrue*, 338 F. App'x 46, 49 (2d Cir. 2009) ("As the ALJ observed, Dr. Rodic's assessment was based on an unreliable foundation: [the claimant's] subjective complaints about his mental limitations.").

The ALJ correctly found that N.P. Roche's finding of memory problems appeared to be based essentially solely on Plaintiff's subjective self-reports. Treatment notes from Horizon Health Services—with which N.P. Roche is affiliated—indicate that Plaintiff reported short-term memory problems and was advised to consult with a neurologist regarding the same. (*See* Dkt. 6 at 70, 74). There is no record in these treatment notes of any diagnostic testing regarding these subjective complaints nor any objective findings regarding the same. The ALJ also correctly noted that Plaintiff's subjective reports regarding memory problems were unsupported by the objective medical evidence of record. Under these circumstances, the ALJ did not err in finding N.P. Roche's opinion unpersuasive. *See Michelle L. P. v. Comm'r of Soc. Sec.*, No. 5:24-CV-00882 (AMN/TWD), 2025 WL 2933191, at *8 (N.D.N.Y. July 25, 2025) ("Dr. Fkiaras['] evaluation was reasonably interpreted by the ALJ to be based in large part on Plaintiff's self-reporting. . . . An ALJ may reject a medical opinion based on such self-reporting."), *adopted*, 2025 WL 2525465 (N.D.N.Y. Sept. 3, 2025).

Plaintiff further argues that the ALJ erred because "even if Plaintiff's mental health impairments were non-severe, the ALJ needed to but failed to account for these in the RFC." (Dkt. 10-1 at 17). But "[w]here an ALJ's assessment of only mild limitations in mental functioning are supported by substantial evidence in the record,

the ALJ is not required to include mental limitations or restrictions in the RFC." *Grace M. v. Comm'r of Soc. Sec.*, No. 20-CV-1023SR, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) (quotation omitted). The ALJ in this case concluded that Plaintiff's mental impairments caused no more than minimal limitations in Plaintiff's ability to do basic work activities. (Dkt. 5 at 21-22). The ALJ further explained that the "residual functional capacity assessment reflect[ed] the degree of limitation [the ALJ had] found in the 'paragraph B' mental function analysis." (*Id*. at 22). The Court finds no error in this analysis. *See Grace M.*, 2022 WL 912946, at *3.

### B. Evaluation of Dr. Liu's Opinion

Dr. Liu examined Plaintiff on August 12, 2022. (Dkt. 5 at 1819-22). Dr. Liu opined that Plaintiff had "mild to moderate limitations for prolonged walking, bending, kneeling, squatting, stair-climbing, lifting and carrying, overhead reaching, and prolonged sitting and standing," and should "avoid dust and other irritating factors[.]" (*Id*. at 1822). The ALJ found Dr. Liu's assessment of "mild to moderate limitations" unpersuasive, noting that it was both vague and inconsistent with other evidence showing that Plaintiff "had normal gaits and no cyanosis, clubbing, or edema in the extremities, and which showed no reference to reduced range of motion in the cervical spine, lumbar spine, or shoulders[.]" (*Id*. at 31).

Plaintiff argues that the ALJ "improperly rejected the more limiting portions of Dr. Liu's opinion." (Dkt. 10-1 at 17). Specifically, Plaintiff contends that the ALJ "should have recontacted Dr. Liu . . . for clarification before rejecting the more limiting portions of his opinion[.]" (*Id*. at 18).

Initially, the Court notes that any error by the ALJ in assessing Dr. Liu's opinion was harmless, because the ALJ adopted an RFC finding that was consistent with Dr. Liu's identified limitations. "Moderate limitations are frequently found to be consistent with an RFC for a full range of light work." *Paula L. v. Comm'r of Soc. Sec.*, No. 20-CV-1224-DB, 2021 WL 3549438, at *7 (W.D.N.Y. Aug. 11, 2021) (collecting cases); *see also Stacie L.S. v. Comm'r of Soc. Sec.*, No. 5:24-CV-01042 (AMN/ML), 2025 WL 2933283, at *11 (N.D.N.Y. Sept. 2, 2025), *adopted*, 2025 WL 2751148 (N.D.N.Y. Sept. 29, 2025); *Frederick C. S. v. Comm'r of Soc. Sec.*, No. 1:23-CV-0723 (GTS/TWD), 2024 WL 4278951, at *11 (N.D.N.Y. Aug. 30, 2024), *adopted*, 2024 WL 4278658 (N.D.N.Y. Sept. 24, 2024); *Candy R. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06608-EAW, 2024 WL 3886221, at *5 (W.D.N.Y. Aug. 21, 2024).

In any event, the ALJ was not obliged to recontact Dr. Liu. The Second Circuit has expressly held that an ALJ may consider vagueness in assessing a medical opinion. *See Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (ALJ was "entitled to conclude that [a medical source's] statements were too vague to be of much help in a concrete assessment of [the plaintiff's] RFC"). And it has also "reaffirmed that an ALJ is free to reject a vague medical source opinion without needing to recontact the source for clarification." *Darci H. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00877 (JGW), 2024 WL 1721333, at *5 (W.D.N.Y. Apr. 22, 2024) (citing *Schillo*, 31 F.4th at 78). The ALJ appropriately relied on the opinions of two other physicians, as well as Plaintiff's "examination findings, her course of treatment, [and] her reported activities" (Dkt. 5 at 32), in assessing Plaintiff's RFC. The Court finds no reversible error in the ALJ's consideration of Dr. Liu's opinion.

Ultimately, it was Plaintiff's burden to prove a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that she had not done so. There is accordingly no basis for the Court to reverse or otherwise disturb the Commissioner's determination in this matter.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: September 24, 2026
Rochester, New York